UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLIVER PLAIR #172434,

    Plaintiff,                                    Hon. Hala Y. Jarbou

v.                                                   Case No. 1:19-cv-815

SCOTT HOLMES,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

    The Court has before it the Motion for Summary Judgment of Defendant Scott Holmes, M.D. (ECF No. 24.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED**.

### I.  Background

    Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), sued Defendant Scott Holmes, M.D., pursuant to 42 U.S.C. § 1983 alleging that he violated Plaintiff's rights under the Eighth Amendment by failing to treat his serious medical need. Plaintiff also alleges that Dr. Holmes retaliated against him in violation of the First Amendment. The events at issue occurred at the Carson City Correctional Facility.

    Plaintiff has a history of back pain caused by a bullet that has been lodged in Plaintiff's back for approximately 30 years. Plaintiff alleges that during an examination on April 8, 2019, Dr. Holmes reminded Plaintiff of his previous warning that if Plaintiff filed another grievance against Dr. Holmes, Dr. Holmes would not provide Plaintiff medical care. Plaintiff alleges that on that date, Dr. Holmes deprived him of medical treatment. (ECF No. 1 at PageID.4.)

In support of his motion, Dr. Holmes has submitted selected portions of Plaintiff's MDOC medical record and an affidavit describing the treatment he provided to Plaintiff.

On January 19, 2018, Plaintiff met with nursing staff regarding a bullet that had been in his back for the past 30 years. Plaintiff believed that the bullet had fallen to the lower part of his back and he said that he felt it when it "fell." Plaintiff also indicated that he did not want to take his blood pressure medication. Amie Gaskill, R.N., examined Plaintiff's back and did not detect a bullet. (ECF No. 24-2 at PageID.114–15.)

On January 22, 2018, Dr. Holmes ordered an x-ray of Plaintiff's lower spine to evaluate a foreign object in Plaintiff's body. (*Id.* at 116–17.) On January 29, 2018, during a chronic care visit, Plaintiff indicated that he wanted the bullet removed from his back. Dr. Holmes scheduled a provider visit to discuss the x-ray findings and a possible operation to remove the bullet. The January 30, 2018 radiology report revealed a fragment from a gunshot wound near the posterior element on the right side of L2. No acute displaced fractures or any other acute osseous abnormalities were shown. (*Id.* at PageID.118–20.)

On February 12, 2018, Dr. Holmes saw Plaintiff for a scheduled visit. Plaintiff told Dr. Holmes that he had felt the bullet fall from its original position. After comparing the January 29, 2018 x-ray films with x-rays taken in 2016 and 2017, Dr. Holmes noted that the bullet fragment had not moved. On examination, Dr. Holmes noted that Plaintiff had a slow, small-step, shuffling gait and was slow to get on and off the exam table. Dr. Holmes noted no spine tenderness, intact reflexes, and heel-toe stance and negative straight leg raising. Dr. Holmes submitted a consultation

request ("form 407") for a Pain Management Committee ("PMC") short form.[1] (*Id.* at PageID.121–25.)

The PMC indicated that Plaintiff should perform low back stretches and take Celebrex 100 mg for his pain and that he should use Zantac for stomach protection. (ECF No. 24-2 at PageID.126.) On March 21, 2018, Dr. Holmes ordered a chart review to discuss the PMC decision with Plaintiff. (*Id.* at PageID.127.)

During a scheduled visit on May 30, 2018, Plaintiff reported that the Celebrex was not helping his pain and that he needed an operation. Dr. Holmes submitted a form 407 for a lumbar spine CT scan with metal reducing technique. (*Id.* at PageID.128–32.) On June 6, 2018, Dr. Papendick approved the request and noted that cauda equina should be considered. (*Id.* at PageID.134.) On June 29, 2018, Dr. Holmes saw Plaintiff for evaluation of his lower back pain. Dr. Holmes noted that the CT scan had been approved and that Plaintiff did not want to pursue any other pain medication. He said that Celebrex was not helping his pain. (*Id.* at PageID.135–36.)

On July 25, 2018, Dr. Holmes reviewed Plaintiff's chart and noted that a lumbar CT scan was pending. He noted that he would change Plaintiff's Celebrex as needed since he had been refusing his medication. (ECF No. 24-2 at PageID.137.) Plaintiff had the CT scan later that day. The CT scan showed, among other things, a retained bullet fragment in a deep right paraspinal erector spinae muscle groups L2-3 without direct bony involvement. (*Id.* at 139–40.) On July 26, 2018, Dr. Holmes reviewed the CT results and submitted a form 407 for a neurosurgery consultation. (*Id.* at PageID.141–43.) On August 6, 2018, Dr. Papendick provided an alternative treatment plan because he found that medical necessity had not been shown for a neurosurgery

---

[1] A form 407 is a request that a prison provider submits to Corizon to approve a referral to Corizon's outside specialist referral network. *See Rhinehart v. Scutt*, 894 F.3d 721, 728 (6th Cir. 2018).

consultation. Dr. Papendick noted that if an electromyography ("EMG") had been completed the report should be supplied with the form 407. (*Id.* at PageID.146–47.) The next day, Dr. Holmes accepted Dr. Papendick's plan and submitted a form 407 for an EMG. (*Id.* at PageID.149–51.) Dr. Papendick approved the EMG on August 8, 2018. (*Id.* at PageID.153.)

On September 18, 2018, Dr. Holmes reviewed the CT results with Plaintiff and informed him that the EMG was pending. (ECF No. 24-2 at PageID.156–57.) Plaintiff underwent the EMG on September 27, 2018, at McLaren Hospital. Dr. John Hawkins, D.O., noted that the study was normal, that clinically, the etiology of Plaintiff's symptoms could not be identified with confidence and the condition could improve with non-operative care. (*Id.* at PageID.158–61.) October 4, 2018, Dr. Holmes saw Plaintiff for a scheduled visit. Dr. Holmes noted that Plaintiff was still in pain and that his EMG was normal. Dr. Holmes submitted a form 407 for a neurosurgery consultation as Plaintiff was interested in pursuing that option. (*Id.* at PageID.163–67.) On October 5, 2018, Dr. Papendick noted that medical necessity for the requested consultation had not been demonstrated because the EMG was normal. (*Id.* at PageID.169–70.)

On November 6, 2018, Dr. Holmes saw Plaintiff for a chronic care visit. Plaintiff complained that his back was "still messed up." Dr. Holmes reviewed Dr. Papendick's alternative treatment plan and the CT result. He also noted that the EMG was negative for radiculopathy. Plaintiff complained that something had fallen in his back and they still had not figured it out. (*Id.* at PageID.172–74.)

On February 5, 2019, Plaintiff was seen for a chronic care visit. Plaintiff complained of chronic back pain. He did not want to add Motrin or Naprosyn to his medications and was not interested in trying Elavil or Duloxetine at the restricted med line. (*Id.* at PageID.175.)

4

On April 8, 2019—the date of the examination Plaintiff cites in his complaint—Plaintiff was seen by Dr. Holmes for a scheduled visit for issues unrelated to his back pain. Dr. Holmes submitted a form 407 for a pain clinic consultation for Plaintiff to consider back pain injection options. (ECF No. 24-2 at PageID.178–80, 183–85.) Dr. Papendick approved the request the following day. (*Id.* at PageID.186–88.) On April 16, 2019, Dr. Holmes noted that Plaintiff's pain clinic consultation was approved and pending. (*Id.* at PageID.189.)

On May 13, 2019, Plaintiff was seen at the Henry Ford Health System Pain Clinic. Samvid Dwivedi, D.O., recommended a lumbar sacral spine x-ray unless he could get a copy of the CT with the images. Dr. Dwivedi suggested an intraarticular facet nerve block at L3–4. (*Id.* at PageID.191–94.) On May 15, 2019, Dr. Holmes submitted a form 407 for a pain clinic procedure for a facet nerve block at L3–4. (*Id.* at PageID.197–99.) Dr. Papendick approved the request on May 20, 2019, and noted that "neurosurgery should be reconsidered with bowel symptoms provided." (*Id.* at PageID.201–02.) On May 27, 2019, Plaintiff submitted a health care request complaining of back pain and other issues. R.N. Allenbaugh advised Plaintiff to discuss these issues at his upcoming appointment. (*Id.* at PageID.204.)

On June 11, 2019, Dr. Holmes saw Plaintiff for a chronic care visit for pain. Dr. Holmes noted that Plaintiff's pain clinic injection was pending for July. (ECF No. 24-2 at PageID.205.) On July 8, 2019, Plaintiff submitted a health care request complaining about back pain, along with blood in his stool and urine. R.N. Depue advised Plaintiff to increase his water intake and take over-the-counter medication for pain. (*Id.* at PageID.209.) On July 15, 2019, Plaintiff presented to healthcare complaining about continued back pain. Plaintiff also said that he had not had a follow-up with the provider. R.N. Wheeler ordered a chart review. (*Id.* at PageID.210.)

5

On July 18, 2019, Dr. Holmes reviewed Plaintiff's chart and pain complaints. (*Id.* at PageID.212.) The same day Plaintiff was seen at the Henry Ford Pain Clinic and underwent a left L3–L4 and L4–L5 intraarticular facet steroid injection and intraarticular arthrogram. Plaintiff tolerated the procedure well and was advised to follow up in two to three months if necessary. (*Id.* at PageID.213–14.) On July 24, 2019, Dr. Holmes submitted a form 407 for Plaintiff to follow up at the pain clinic in two to three months. (*Id.* at PageID.216–19.) Later that day Dr. Holmes reviewed Plaintiff's pain clinic paperwork and noted that the clinic had requested an x-ray prior to Plaintiff's next appointment. (*Id.* at PageID.221.) On July 30, 2019, Vivien Dorsey, M.D., provided an alternative treatment plan to Dr. Holmes's request for a pain clinic follow up because medical necessity was not met. She advised Dr. Holmes to consider a careful neuromuscular examination. (*Id.* at PageID.223–24.)

On August 7, 2019, Dr. Holmes reviewed the response to his form 407 and accepted the alternative treatment plan. He noted that he would review the alternative plan with Plaintiff. (ECF No. 24-2 at PageID.225.) On August 19, 2019, Dr. Holmes saw Plaintiff for a scheduled follow up regarding his back pain. Dr. Holmes ordered an updated x-ray of Plaintiff's lower spine. The x-ray was performed on August 22, 2019. (*Id.* at PageID.226–29.) That same day, radiologist Michael Henderson, D.O., reviewed the x-ray and noted that Plaintiff had little to any interval changes in the lumbar spine, mild degenerative disc change at L5/S1, and mild facet joint arthritic changes were present. (*Id.* at PageID.231.) On August 27, 2019, Dr. Holmes reviewed the radiology report. (*Id.* at PageID.232.)

On September 10, 2019, Plaintiff submitted a health care request stating his pain was now worse than when he was shot. R.N. Nelson advised Plaintiff to discuss his concerns at his upcoming appointment. (*Id.* at PageID.233.) On September 24, 2019, Dr. Holmes saw Plaintiff for

a scheduled visit. Dr. Holmes noted that his request for a pain clinic follow up had not been approved. Dr. Holmes noted that Plaintiff was able to walk with an equal and balanced gait and reported normal findings on examination. Dr. Holmes ordered a follow up for one month to check the status or Plaintiff's pain. (*Id.* at PageID.234–36.)

On October 8 and 20, 2019, Plaintiff sent health care requests complaining of back pain. R.N. Nelson informed Plaintiff that he had an upcoming appointment with the provider. (*Id.* at PageID.238–39.) On October 24, 2019, Dr. Holmes saw Plaintiff for a scheduled visit. Plaintiff did not mention his back pain during the appointment. (*Id.* at PageID.240–42.) Dr. Holmes submitted a form 407 for a follow up to the pain clinic, which Dr. Papendick approved on October 29, 2019. (*Id.* at PageID.243–47.) Plaintiff's pain clinic appointment was scheduled for February 4, 2020.

On November 8 and November 22, 2019, Plaintiff submitted health care requests complaining of continued back pain. Plaintiff was informed that he had an upcoming appointment to address these concerns. (ECF No. 24-2 at PageID.249–50.) On November 26, 2019, Dr. Holmes saw Plaintiff for a scheduled appointment to address his complaints of back pain. Dr. Holmes noted that Plaintiff had an off-site appointment pending. (*Id.* at 251–53.)

Between November 27, 2019, and January 5, 2020, Plaintiff did not complain about back pain. However, Dr. Holmes saw Plaintiff for other medical issues. (ECF No. 24-3 at PageID.287.)

On January 6, 2020, Dr. Holmes saw Plaintiff for a chronic care visit. Plaintiff complained that his back was "killing" him. Plaintiff was scheduled for a provider visit later in the month to discuss his back pain. (ECF No. 24-2 at PageID.255–57.) On January 17, 2020, Plaintiff submitted a health care request complaining that he had had x-rays taken over a week ago and had yet to see the doctor. R.N. Wheeler ordered a chart review and informed Plaintiff that he had an appointment

set for the second week of February. (*Id.* at PageID.259.) Plaintiff submitted another health care request on January 23, 2020, complaining of pain. R.N. Nelson advised Plaintiff to take Tylenol or Ibuprofen for his pain and reminded him that he was scheduled to see the provider soon. (*Id.* at PageID.260.)

On February 4, 2020, Plaintiff returned to Henry Ford Pain Clinic. Plaintiff did not receive an injection because did not have the proper authorization. (ECF No. 24-2 at PageID.261–65.) On February 6, 2020, Dr. Holmes saw Plaintiff and noted that he was unable to get his injection due to the lack of paperwork. (*Id.* at PageID.267–68.)

On March 17, 2020, Dr. Holmes reviewed Plaintiff's chart and noted that he would consider sending a form 407 to cooperate with the pain clinic's request from February 4, 2020, to follow up for a left L3–L4, L4–L5 facet injection. (*Id.* at PageID.273; ECF No. 24-3 at PageID.288.) On March 19, 2020, Dr. Holmes saw Plaintiff for back pain. Dr. Holmes reviewed the paperwork from Plaintiff's February 4, 2020 visit to the pain clinic and ordered a follow up in one month to check on Plaintiff's pain and an offsite visit to the pain clinic. (ECF No. 24-2 at PageID.274–275.)

On March 27, 2020, Plaintiff submitted a health care request complaining of back pain. R.N. Saunders informed Plaintiff that he had an upcoming provider appointment and that sleeping through the night was a good sign that his pain medication was working. Plaintiff was advised to continue doing his daily stretching exercises. (*Id.* at PageID.276.) On April 7, 2020, Plaintiff submitted a health care request complaining of worsening back pain. R.N McIntyre informed Plaintiff that he had an upcoming provider appointment. (*Id.* at PageID.277.)

On April 13, 2020, Dr. Holmes submitted a form 407 for a follow-up visit for pain management. (*Id.* at PageID.278.) On April 16, 2020, Dr. Holmes spoke to Plaintiff by phone

regarding his back pain. Dr. Holmes informed Plaintiff that he was approved to return to the pain clinic for an injection and CT scan. Plaintiff requested to be taken off Oxybutynin. Dr. Holmes discontinued this medication and increased Plaintiff's dosage for Elavil to 50 mg. (*Id.* at PageID.279–81.)

On May 13, 2020, Plaintiff submitted a health care request complaining of back pain. R.N. Geister advised Plaintiff that she would forward his request to the provider and that Plaintiff should stretch, use warm/cool compresses, alternate Tylenol and Motrin and maintain appropriate posture. R.N. Geister also advised Plaintiff that he had a chronic care visit in less than a month and if his issues persisted, he should send another request once the state of emergency was lifted as health care was seeing prisoners on an urgent/emergency basis only. (ECF No. 24-2 at PageID.282.)

On May 14, 2020, N.P. Hilding noted that Plaintiff's offsite appointment for a facet injection was still pending and would be scheduled at a later date due to COVID-19. On June 8, 2020, Plaintiff submitted a health care request stating that his medication was not "doing any good." Plaintiff's request was forwarded to the provider. (*Id.* at PageID.283–84.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.   Discussion

#### A.   Eighth Amendment Claim

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must

10

"place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005).

"A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Rhinehart*, 894 F.3d at 738 (citing *Farmer*, 511 U.S. at 844). So long as a doctor does not knowingly expose a prisoner to an excessive risk of serious harm and exercises reasonable medical judgment, the Sixth Circuit will defer to the doctor's judgment. *Id.* "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Moreover, where the plaintiff's claim amounts to disagreement with the medical provider's judgment or approach to medical treatment, the claim against the defendant-provider fails. *See White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004).

Citing *Murphy v. Grenier*, No. 07-CV-15248, 2009 WL 1044832 (E.D. Mich. Apr. 20, 2009), Dr. Holmes argues that Plaintiff's back pain did not constitute a serious medical need for purposes of the objective prong of his claim because Plaintiff attributed his back pain to a condition that he had lived with for the past 30 years, and Plaintiff received only conservative treatment for his back pain. In addition, the objective medical evidence did not indicate a serious medical condition. Several courts have held that back pain, without more, does not constitute a serious medical need. *See Billizone v. Jefferson Parish Corr. Ctr.*, No. 14-1263-SS, 2014 WL 7139636, at *3 (E.D. La. Dec. 15, 2014) (concluding that the plaintiff's back pain caused by disc erosion in his lower back did not rise to the level of a serious medical need); *Veloz v. New York*, 339 F. Supp. 2d 505, 522–26 (S.D.N.Y. 2004) (concluding that the plaintiff's back pain and mild to moderate degenerative arthritis of the spinal vertebrae did not constitute a serious medical condition). On the other hand, the Sixth Circuit has recognized that "extreme pain due to [a] back condition" can constitute "an objectively serious medical condition." *Murphy v. Grenier*, 406 F. App'x 972, 975 (6th Cir. 2011); *see also Crowell v. Abdellatif*, No. 15-13825, 2017 WL 1186388, at *4 (E.D. Mich. Mar. 2017) ("Plaintiff meets the objective prong of a deliberate indifference claim in that he has the sufficiently serious medical condition[] of . . . back pain . . . .").

Although Dr. Holmes's argument is persuasive, the Court need not decide whether Plaintiff has established the objective prong of his claim as the evidence of record, which is not in dispute, shows that Dr. Holmes was not deliberately indifferent to Plaintiff's back pain. Dr. Holmes did not ignore Plaintiff's back pain. Instead, he ordered x-rays, CT scans, and other tests in order to determine the source of Plaintiff's pain. Dr. Holmes also obtained approvals for Plaintiff to obtain treatment at the pain clinic. Plaintiff argues, however, that the fact that Dr. Holmes elected to engage in over 20 chart reviews instead of physically examining Plaintiff shows that Dr. Holmes

was deliberately indifferent to Plaintiff's serious medical needs. This argument lacks merit. As the foregoing recitation of Plaintiff's medical record shows, Dr. Holmes did not ignore Plaintiff's back pain, but instead reasonably treated Plaintiff's condition. Plaintiff fails to present any evidence that even arguably suggests that Dr. Holmes ignored Plaintiff's serious medical needs or disregarded a substantial risk to Plaintiff's health. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). In sum, Plaintiff has not shown that Dr. Holmes' treatment of Plaintiff's back pain was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake*, 537 F.2d at 860 n.5).

### B.     Retaliation Claim

In order to state a First Amendment retaliation claim, a plaintiff must establish that: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). If the plaintiff can show that his protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct, "the burden shifts to the defendant to show that the same action would have been taken even absent the protected conduct." *Brown v. Crowley*, 312 F.3d 782, 787 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 399).

Plaintiff's claim fails at the second element. Although Plaintiff alleges in his complaint that Dr. Holmes refused to treat Plaintiff because he filed a grievance, Plaintiff fails to present evidence showing that Dr. Holmes's treatment of Plaintiff's back pain after Plaintiff filed his grievance

differed in any material respect from the treatment he provided before Plaintiff filed his grievance. As noted above, Plaintiff specifically mentions the April 8, 2019 visit with Dr. Holmes in his complaint. The evidence shows, however, that during or following that visit, Dr. Holmes submitted a form 407 requesting that Plaintiff be seen at the pain clinic. Plaintiff subsequently received treatment at the pain clinic, and Dr. Holmes even put in another form 407 request for a follow-up visit at the pain clinic that was also approved. In short, Plaintiff offers no admissible evidence to support his claim that Dr. Holmes took an adverse action against Plaintiff by refusing to treat him. Although Plaintiff has included a verification at the end of his response pursuant to 28 U.S.C. § 1746 (ECF No. 25 at PageID.299), Plaintiff offers no more than legal conclusions, which cannot create a genuine issue of fact. *See Lee v. Tineralla*, No. 17-cv-797, 2019 WL 4010368, at *1 (W.D. Mich. Aug. 26, 2019) (noting that "legal conclusions even if asserted in a sworn pleading are not enough to create a genuine issue of material fact for trial").

In addition, even if Plaintiff had offered evidence to support a prima facie case of retaliation, Dr. Holmes states in his affidavit that "[t]he care provided [to Plaintiff] would have been the same in the absence of any grievance." (ECF No. 24-3 at PageID.289.) In other words, Plaintiff's grievance had no impact on the level of care that Dr. Holmes provided. This evidence stands unrebutted. Accordingly, Plaintiff's retaliation claim also fails.

### IV.  Conclusion

For the reasons set forth above, I recommend that the Court **grant** Dr. Holmes' motion for summary judgment (ECF No. 24) and dismiss Plaintiff's complaint with prejudice.

I further recommend that an appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

Dated: December 29, 2020            /s/ Sally J. Berens
                                                      SALLY J. BERENS
                                                      U.S. Magistrate Judge

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).